**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**LAKE CHARLES DIVISION**

| | | |
|---|---|---|
| **ELDRINA M. WILLIAMS** | : | **DOCKET NO. 05-0018** |
| **VS.** | : | **JUDGE TRIMBLE** |
| **JO ANNE B. BARNHART, COMMISSIONER OF SOCIAL SECURITY** | : | **MAGISTRATE JUDGE WILSON** |

### REPORT AND RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits. The matter has been referred to the undersigned magistrate judge for a report and recommendation pursuant to 28 U.S.C. §636(b)(1)(B).

After a review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. §405(g), the undersigned finds that the Commissioner's decision is not supported by substantial evidence. *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

### BACKGROUND

On May 11, 2001, Eldrina M. Williams filed an application for a period of disability and disability insurance benefits. (Tr. 23, 87-88). She alleged an inability to work since February 12, 2001, due to post concussion syndrome, cervical and lumbar disk disease, neuropathy, bilateral carpal tunnel syndrome, and fibromyalgia. (Tr. 87, 93). The claim was denied at the agency level of the administrative process. (Tr. 77-81). Thereafter, Williams requested, and received an April 24, 2002, hearing before an Administrative Law Judge ("ALJ"). (Tr. 36-59). A supplemental hearing was held on August 5, 2002, to allow plaintiff an opportunity to question the vocational expert. (Tr. 61-76). However, in a January 31, 2003, written decision, the ALJ determined that

Williams was not disabled under the Act at both Step Four and Five of the sequential evaluation process. (Tr. 23-30). Williams appealed the unfavorable decision to the Appeals Council. Yet, on October 29, 2004, the Appeals Council denied Williams' request for review, and thus the ALJ's decision became the final decision of the Commissioner. (Tr. 9-13).

Williams now seeks review of the denial of benefits. She argues that the ALJ's residual functional capacity assessment is not supported by substantial evidence.

## STANDARD OF REVIEW

The court's review of the ultimate decision of the Commissioner is limited to determining whether the administrative decision is supported by substantial evidence and whether the decision is free of legal error. *Dellolio v. Heckler*, 705 F.2d 123 (5th Cir. 1993). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying the improper legal standards. *Singletary v. Brown*, 798 F.2d 818 (5th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. at 401.

When appearing before the ALJ, the plaintiff had the burden of proof to establish a medically determinable physical or mental impairment that prevented her from engaging in any substantial gainful activity for at least twelve consecutive months. 42 U.S.C. §§423(d)(1)(A) & 1381(a). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. *Johnson v. Bowen,* 864 F.2d 340, 343-344 (5th Cir. 1988). The reviewing court may not re-weigh the evidence, try the issues *de novo*,

or substitute its judgment for that of the Secretary. *Greenspan v. Shalala*, 38 F.3d 232, (5th Cir. 1994).

## LAW AND ANALYSIS

The secretary evaluates disability claims under the Social Security Act through a five-step process: (1) Is the claimant currently working and engaged in substantial gainful activity? (2) Can the impairment or combination of impairments be classified as severe? (3) Does the impairment(s) meet or equal a listed impairment in Appendix 1 of the Secretary's regulations? (If so, disability is automatic.) (4) Does the claimant's residual functional capacity permit her to perform past relevant work? and if not, (5) Can the claimant perform other work? 20 C.F.R. §§ 404.1520, 416.920. When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). The first four steps place the burden upon the claimant. At the fifth step, the burden shifts to the Secretary to establish that the claimant can perform other work. If the Secretary meets this burden, then the claimant must prove that he cannot in fact perform the work suggested. *See Falco v. Shalala*, 27 F.3d 160 (5th Cir. 1994); *Muse v. Sullivan*, 925 F.2d 785 (5th Cir. 1991).

At Step Two of the sequential evaluation process, the ALJ determined that one or more of the following impairments suffered by Williams was severe: status post anterior cervical laminectomy, seizure disorder, back pain, hip and leg pain, and depression. (Tr. 24, 29). However, the impairments were not severe enough to meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. *Id.* The ALJ then found that Williams retained the residual functional capacity for light work, reduced by the claimant's ability to sit or stand at her option. (Tr. 27, 29). She also cannot climb rope or scaffolds, but can

occasionally climb stairs or ramps. *Id*. She can occasionally balance, stoop, kneel, crouch, and crawl, but must avoid reaching or working overhead. *Id*. She is also moderately limited in her ability to understand, remember, and carry out detailed instructions, but is not limited in her ability to understand, remember, and carry out simple job instructions. *Id*. She is moderately limited in her ability to maintain attention and concentration for extended periods, to interact with the general public, and to accept criticism from superiors. *Id*. She is moderately limited in the ability to set goals. *Id*. Due to a seizure disorder, she is prevented from working at heights or around dangerous moving machinery. *Id*.[1]

Plaintiff contends that the ALJ's residual functional capacity is not supported by substantial evidence. Specifically, she relies on the limitations imposed by the Commissioner's consultative physician, and on post-ALJ decision evidence that was submitted to the Appeals Council.[2]

In reaching his decision, the ALJ essentially relied on a residual functional capacity form

---

[1] Light work entails:
> . . . lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

[2] We need not consider the post-decision evidence because the pre-decision evidence does not provide substantial support for the ALJ's determination. The new evidence can be considered upon remand.

completed by a non-examining agency physician in September 2001. (Tr. 294-301).[3] Of course, an ALJ may rely on a non-examining physician's assessment only when those findings do not contradict the findings of the examining physician. *Carrier v. Sullivan*, 944 F.2d 243, 246 (5th Cir.1991)(quoted source omitted). Yet here, the agency physician acknowledged that his or her assessment significantly differed from the limitations or restrictions recognized by a treating or examining source. (Tr. 300).

In fact, three treating physicians stated that plaintiff was disabled and unable to work. For instance, on May 8, 2001, Dr. Gunderson wrote a note stating that Williams was disabled until further notice. (Tr. 277). On July 26, 2001, Charles Humphries, M.D., wrote a letter regarding Williams' disability status. (Tr. 279). He stated that Williams had been his patient for the past two years, and had been diagnosed with fibromyalgia. *Id*. Treatment had been unsuccessful. *Id*. Humphries noted that Williams' clinical condition had deteriorated, resulting in secondary depression. *Id*. Her clinical prognosis and chance for complete recovery were very poor at that point. *Id*. Humphries opined that Williams would be unable to work indefinitely until her clinical condition resolved. *Id*.

In a July 30, 2002, letter, Fayez Shamieh, M.D., wrote that Williams had a diagnosis of post concussion syndrome, cervical and lumbar disk disease, and neuropathy versus bilateral carpal tunnel syndrome. (Tr. 405). She had recently experienced constant headaches, depression, and a seizure disorder. *Id*. Shamieh opined that she was disabled, and unable to work at that time. *Id*.

---

[3] The physician's name is illegible He or she indicated that Williams could occasionally lift 20 pounds, and frequently lift 10 pounds. *Id*. Williams could stand, walk, and/or sit about six hours in an eight hour day. *Id*. Pushing and pulling were unlimited. *Id*. She could occasionally climb ramps and stairs, but never climb ropes, ladders or scaffolds. *Id*. All other postural activities were limited to occasional. *Id*.

We recognize that conclusory statements that a claimant is disabled or unable to work are accorded no special significance. SSR 96-5p. However, the statements by plaintiff's treating physicians are supported by the specific limitations recognized in a subsequent consultative examination conducted by Riad Hajmurad, M.D., on September 30, 2002, at the behest of Disability Determination Services. (Tr. 412-414). Hajmurad found that Williams had a good range of motion in the upper extremities. *Id*. He diagnosed a history of fibromyalgia, and was unsure if she had carpal tunnel syndrome or radiculopathy. *Id*. He noted that Williams also had a history of seizures. *Id*.

Hajmurad completed a Medical Source Statement of Ability to do Work-Related Activities (Physical). (Tr. 415-418). He indicated that Williams could occasionally lift less than 10 pounds. *Id*. She was limited in walking to less than two hours in an eight hour day. *Id*. Pushing and pulling were limited in the upper and lower extremities. *Id*. Postural activities were limited to occasional. *Id*. Manipulative functions were limited to occasional. *Id*. Her ability to see was limited. *Id*. Her exposure to all environmental conditions was limited. *Id*.

Obviously, Dr. Hajmurad's findings are contrary to the ALJ's residual functional capacity assessment. Thus, the ALJ discounted Dr. Hajmurad's assessment because it purportedly was not supported by Hajmurad's essentially normal examination. However, Hajmurad noted that at least some of Williams' complaints were legitimate, and that EEG results documented her seizures. (Tr. 414). In contrast, at the time of the non-examining physician's assessment, Williams' seizures had not yet been diagnosed. If anything, Dr. Hajmurad's assessment provides a more comprehensive evaluation of plaintiff's impairments relevant to the time of the decision.

Even if Hajmurad's assessment were properly discarded, we would also have to exclude the unknown, non-examining physician's evaluation because it contradicts the findings of the

6

treating physicians. That would leave the record devoid of a valid medical assessment of the limitations imposed by plaintiff's impairments. Without the requisite medical assessment or other corroborating evidence, the ALJ's determination that plaintiff retained the residual functional capacity for light work is not supported by substantial evidence. *See, Ripley v. Chater* 67 F.3d 552, 557 -558 (5th Cir. 1995)(substantial evidence lacking where no medical assessment of claimant's RFC, and claimant's testimony was inconsistent with ALJ's assessment);[4] *Butler v. Barnhart*, Case Number 03-31052 (5th Cir. 06/02/2004)(unpublished)(in the absence of medical opinion or evidence establishing that the claimant could perform the requisite exertional demands, the ALJ's determination is not supported by substantial evidence).[5]

In sum, we find that the ALJ's residual functional capacity assessment is not supported by substantial evidence.[6] The error is material to the ALJ's Step Four determination because Williams' past relevant work was performed at the light exertional level, or above. (Tr. 162-164). The error is also material to the ALJ's alternative Step Five determination because despite the vocational expert's identification of potential jobs at the sedentary level, the hypothetical did not include additional non-exertional impairments on manipulative functioning and exposure to environmental conditions. (*See*, Tr. 65-67).

---

[4] Williams' testimony is inconsistent with the ALJ's RFC.

[5] Unpublished Fifth Circuit opinions issued on, or after January 1, 1996, are ordinarily not precedent. FRAP 47.5.4. However, they are persuasive. *Id.* Moreover, the fact that a case remains unpublished reflects the panel's belief that the decision simply reaffirmed a well-settled principle of law. *See*, FRAP 47.5.1.

[6] Although not raised by plaintiff, we also point out that the ALJ's residual functional capacity determination did not include moderate limitations in Williams' ability to complete a normal workday without interruptions from psychological symptoms and to perform at a consistent pace. These limitations, however, were included in the state agency assessment to which the ALJ assigned substantial weight. (Tr. 26, 371-373).

For the foregoing reasons,

IT IS RECOMMENDED that this matter be REVERSED and REMANDED to the Commissioner for further proceedings consistent with this opinion.

Under the provisions of 28 U.S.C. §636(b)(1)(C), the parties have ten (10) business days from receipt of this Report and Recommendation to file any objections with the Clerk of Court. Timely objections will be considered by the district judge prior to a final ruling.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING ON APPEAL, EXCEPT UPON GROUNDS OF PLAIN ERROR, THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT.**

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this 1st day of November, 2005.

_____
ALONZO P. WILSON
UNITED STATES MAGISTRATE JUDGE